Filed 5/1/25  In re M.N. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re M.N., a Person Coming Under the Juvenile Court Law. | |
| J.B., Petitioner and Respondent, v. C.N., Objector and Appellant. | F088557 (Super. Ct. No. 23AD-00072) **OPINION** |

## THE COURT[*]

APPEAL from an order of the Superior Court of Merced County.  Mark V. Bacciarini, Judge.

Valerie N. Lankford, under appointment by the Court of Appeal, for Objector and Appellant.

No appearance for Petitioner and Respondent.

-ooOoo-

[*]      Before Franson, Acting P. J., Snauffer, J. and Fain, J.[†]

[†]      Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

The Merced County court granted a petition by J.B. (stepfather) under Family Code section 7820 et seq.[1] to terminate the parental rights of C.N. (father), thereby freeing M.N. (minor) for adoption by stepfather, who is currently married to M.B. (mother). Father appealed. After reviewing the court record, father's court-appointed counsel informed this court she could find no arguable issues to raise on father's behalf. This court granted father leave to personally file a letter setting forth a good cause showing that an arguable issue of reversible error exists. (*In re Phoenix H.* (2009) 47 Cal.4th 835, 844.) Father filed numerous letters alleging error on the part of the court in its findings, as well as misconduct on the part of his counsel. We conclude father failed to set forth a good cause showing that any arguable issue of reversible error arose from the hearing. Consequently, we dismiss the appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 14, 2023, stepfather petitioned the court to free minor from the custody and control of father under section 7820 et seq. in order to proceed with his adoption request. Stepfather's petition was based on section 7822 (abandonment) and section 7825 (felony conviction), although the request for termination of parental rights under section 7825 was later withdrawn.

Father filed a declaration with the court opposing the petition. Father stated that he and mother were divorced in 2016, at which time he was granted regular visitation and phone calls with minor. Father alleged that he provided minor with clothing, birthday gifts, and visited minor twice a month, as granted by the court. Father also alleged that he attempted to pay mother child support, but she declined and "canceled the order."

According to father, in 2018, he and mother agreed on a custody schedule allowing him to have minor every other weekend, Christmas/winter break, and various other holidays Father alleged that, at the end of 2018, mother stopped allowing him to see minor because stepfather "gave her [such] a hard time." At this point, father retained

---

[1] All further statutory references are to the Family Code.

2.

a lawyer and he and mother returned to court. During a hearing in September 2019, father alleged he listened to mother's "lies and accusations" at the hearing and directed a speech to her while in the courtroom, stating he was going to give mother "her way." After that, mother would not allow father to see or talk to minor, and he had not seen her since, although he continued to send minor gifts and leave messages to her on mother's phone.

Father claimed that, during the custody battle in 2019, mother and stepfather began stalking and harassing him, which led to several attempts on father's life. From 2020 through 2023, father filed numerous police reports of being harassed, stalked, and poisoned by mother and stepfather, as well as by other individuals who did so at mother's behest.

Father appeared at the January 26, 2024 hearing to contest the petition filed by stepfather. The court appointed counsel for father and minor, and referred the matter to a court investigator to conduct an investigation. A hearing was set for March 1, 2024, but continued to March 15, 2024.

The court investigator's report (the investigative report) was filed on March 14, 2024, and on March 15, 2024, father requested the matter be set for trial. A contested hearing was set for April 19, 2024.

The investigative report stated that mother was 15 years old at the time of minor's conception and father was 26 years old. In January 2011, father shot his mother's boyfriend multiple times and was convicted of attempted murder among other related felony charges. Minor was born in August 2011 while father was incarcerated. Mother and father married in 2013 when mother reached the age of majority.

The investigative report stated that in December 2014, father filed for dissolution of the marriage. No child support case was located. In May 2016, mother was granted sole legal and physical custody of minor, with minor ordered to have visitation with incarcerated father once a month and phone calls were granted two days per week. The dissolution was finalized in July 2016. Later that year, minor began to exhibit anxiety

3.

and was enrolled in therapy. In January 2017, mother and father agreed to father having visitation with minor at his correctional facility twice a month.

According to the investigative report, in June 2019, father was released from prison and orders were made prohibiting visitation between minor and father following his release. A temporary restraining order was granted on July 5, 2019, noting father as the restrained party and mother as the protected party, with no exception for peaceful contact. A permanent restraining order was granted in August 2019, with an exception for peaceful contact granted.

The investigative report stated that on September 27, 2019, father made an oral motion to drop his request for child custody and visitation, and the court confirmed sole legal and physical custody to mother with no visitation to father. Minor remained in therapy, with father's visitation and contact to be considered by minor's therapist.

The investigative report noted that "father is currently pending 17 felony charges … related to an assault of his mother's significant other on [December 4, 2021], the same party [father] was previously convicted of shooting multiple times in 2011. A trial setting conference is currently set for [March 20, 2024]."

As for minor, the investigative report found minor, now 11 years old, to be "engaging, articulate and thoughtful." Minor understood the proceedings, loved stepfather, and wished to be adopted by him. She knew father was her biological father, but had last seen him when she was "really little" and was unable to describe anything about him. The investigator opined that granting the petition was in minor's best interests.

Prior to the April 15, 2024 hearing, father filed a request for an order that minor be interviewed as to her desire to be adopted. Stepfather opposed the request because minor had already been interviewed by trial counsel and the court investigator. Father's request was denied on April 12, 2024. At the same hearing, the court ordered replacement counsel for father. Due to difficulty finding available counsel, the contested hearing was not held until August 9, 2024.

In his brief for the contested hearing, stepfather argued, inter alia, that father had filed numerous motions and attended numerous hearings in court since September 2019 when mother had been given full custody, but he had never filed a motion to modify custody or visitation prior to December 2023. During those four years, father made a phone call and sent a text message to mother on October 14, 2019, asking to speak to minor; he called mother and left a message on March 27, 2021, asking if minor was " 'ok' "; he called mother on November 11, 2021, and left a voice message stating he had an emergency and asked that mother call back, but did not inquire about minor; and three times (December 13, 24, and 25, 2023), father called and left voice messages for minor. After father was served with the petition for adoption on December 26, 2023, father called and left a message for minor, stating he had been fighting to get her back for four years. He left a similar message on January 10, 2024. Following a "barrage of bizarre texts" mother received from father, the court granted mother's request to include minor and stepfather in the existing restraining order.

Stepfather's brief argued that father storming out of the courtroom in 2019 and stating "[y]ou can have her," was evidence of father's intent to abandon minor as required by section 7822. Stepfather argued further that, even if doing so did not constitute voluntary abandonment due to the "no visitation" order, father's inaction during the ensuing four years converted the involuntary status to a voluntary abandonment.

At the August 9, 2024 hearing, mother, father, and stepfather all testified. Mother testified that she interpreted father's actions at the 2019 hearing as father being "done" with minor. Mother claimed father never contacted her between September 2019 to December 2023 asking to visit minor. Mother stated that father had never paid any financial support for her. At one point, she had a child support order, but she dropped it because she was worried it might "set him off." According to mother, on two occasions during the four-year period, father had gone for a period of over a year without contacting her.

Stepfather testified that he had been in minor's life since she was two years old and was committed to adopting her if father's parental rights were terminated.

Father testified he had always been in minor's life and she had seen and talked to him regularly. He alleged he had bought her school clothes and gave mother money for whatever minor needed. He had sent $200 at one point that was returned to him. Father testified that he sent minor money through family members while he was incarcerated and, when he tried to send child support, he was told the case had been dropped.

Father testified that he began fighting for minor after he and mother got divorced. He initiated proceedings in court, but then mother began telling lies about him and making up false allegations. His recollection of the 2019 hearing was that he had said to mother, in court, "[I]f you are going to keep trying to break your daughter's heart, I'll give you your way today." Father testified that he said it out of desperation, and it was his "biggest regret." After the hearing, he called mother continuously to speak to minor, but was told by mother he could not do so due to the restraining order. When he eventually called stepfather to try to speak to minor, stepfather called the police. Father insisted that he had done everything he could to have contact with minor, but was told by the court system that he was not allowed to do so.

Counsel for stepfather described father's efforts as "token efforts," and asked that the petition to terminate father's parental rights be granted. Minor's counsel joined stepfather's argument. Father's counsel argued there was no clear and convincing evidence that father wished to abandon minor.

After considering the parties' briefing, testimony, and the investigative report, the court found clear and convincing evidence that father had left minor in the care of mother for a period of over one year without provision for support with the intent to abandon her. In doing so, the court noted father's statement made at the September 2019 hearing. It then found minor adoptable and terminated father's parental rights.

## **DISCUSSION**

An appealed-from judgment or order is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  It is the appellant's burden to raise claims of reversible error or other defect and present argument and authority on each point made.  If the appellant fails to do so, the appeal may be dismissed. (*In re Sade C.* (1996) 13 Cal.4th 952, 994.)

Section 7800 et seq. allows for a child to be declared free from a parent's custody and control to facilitate the child's adoption.  The purpose of these proceedings "is to serve the welfare and best interest of a child by providing the stability and security of an adoptive home when those conditions are otherwise missing from the child's life." (§ 7800.)  These statutory provisions must "be liberally construed to serve and protect the interests and welfare of the child."  (§ 7801.)

Section 7822 provides grounds for terminating parental rights when a parent has voluntarily abandoned a child.  A "section 7822 proceeding to terminate parental rights is appropriate 'where three main elements are met:  (1) the child must have been left with another; (2) without provision for support or without communication from the parent for the statutory period; and (3) with the intent on the part of the parent to abandon the child.' "  (*In re Aubrey T.* (2020) 48 Cal.App.5th 316, 326.)  A parent's "failure to provide support, or failure to communicate is presumptive evidence of the intent to abandon.  If the parent or parents have made only token efforts to support or communicate with the child, the court may declare the child abandoned by the parent or parents."  (§ 7822, subd. (b).)

As noted above, father's counsel found no viable issues on appeal.  Father, in his numerous and lengthy letter briefs, repeatedly states that he is incarcerated and has not had adequate time or resources to be able to properly study whether there are any arguable issues on appeal.  In his first letter, father alleges he was waiting for evidence via mail "supporting my claims of [extraordinary circumstances] for retrial .…"  Father alleges further that he has tried to contact counsel repeatedly "to discuss the

7.

[extraordinary circumstances]" to no avail, including "foul play" by mother and stepfather, stalking him out of state in the summer of 2020 and "poisoning and [drugging] [h]im with a group of people …." Father contends the court and counsel both ignored his "respon[s]e" to the attempts on his life and his requests to get on the court's calendar. Father further contends he tried to contact mother and minor repeatedly and thereby did not go a period of 12 months without contact.

In his second letter, father insists that he tried to contact minor, but was told he couldn't because of the restraining order and counsel advised him not to until his violation of the restraining order was dismissed "in the [interest] of justice," but counsel did not help him get the issue on calendar to do so. He also repeated the allegations against mother and father as discussed in his first letter.

In his third letter, father continues to allege a violation of his rights due to the lack of jail law library time, and alleges he is still unable to get the necessary transcripts, and that he was requesting an extension of time due to the misrepresentation of counsel, the court's failure to investigate the attempted murder on his life, and the child abuse which minor suffered as she was with stepfather when stepfather attempted to murder father. He also contends he did not get a chance to "go over" transcripts to edit them and counsel violated rules of professional conduct, as father was harassed and discriminated against inside and outside of the court room. Father further contends that he kept regular visitation and phone calls with minor except when he was trying to get his alleged violation of the restraining order dismissed.

Father labels his fourth letter, as "ADDITIONAL HABEAS CORPUS …," and makes repeated claims of ineffective assistance of counsel due to counsel's violation of rules of professional conduct.

The claims set forth in father's multiple letter briefs are, in essence, that he had no intention to abandon minor, but that due to his incarceration and instruction by counsel not to attempt to contact minor until the restraining order was dismissed, which he

8.

contends counsel and the court system did not do in a timely manner, the applicable time period to prevent abandonment elapsed.

To the extent father is attempting to raise a claim of ineffective assistance of counsel, it would fail. To prevail on a claim of ineffective assistance of counsel, a parent must establish "counsel failed to act in a manner to be expected of reasonably competent attorneys practicing in the field of juvenile dependency law" and the "claimed error was prejudicial." (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1667–1668.)

There is no evidence father's counsel was ineffective. The issue of father's presence or lack thereof in minor's life was thoroughly litigated, as was the issue of the restraining order and father's various claims that he was stalked and harassed.

Having reviewed father's four letter briefs, we find father has not made a showing of good cause that any arguable issue exists. (*In re Phoenix H.*, *supra*, 47 Cal.4th at p. 846.) Accordingly, we reject father's claims.

**DISPOSITION**

This appeal is dismissed.

9.
